De Saussure, Chancellor.
This is a bill for the partition of an estate devised to the complainants, and the defendant.
It appears that George Hicblin having a wife, but no children, made and duly executed his last will and testament, on-day December, 1823, by which he devised and bequeathed his whole estate to his wife for life, and at her death to the complainants and defendants, who were his nephews and nieces, subject to two small legacies amounting to two hundred dollars. The words of the will applicable to the question under consideration are as follows ; “ And all the balance of said estate real and personal, it is my will and desire, that it be equally divided between Henry and Elizabeth Cole’s children, and Alexander' Creyón, viz., the offspring of the said Elizabeth Cole’s body, and no other — to be retained in the hands of my executors and executrix until the age of twenty-one years, or days of marriage, which shall first happen; then to be made over to them lawfully, each legatee receiving their just quota of the same, which I will and bequeath to them and their heirs forever. ” The testator had two nieces — Elizabeth,* married to Henry Cole, and Sarah, the wife of-Creyón. The complainants are the children of Elizabeth Cole, and the defendant is the only son of Sarah Creyón.
George Hicblin died leaving his said last will and testament in full force, his wife, and said nieces, Elizabeth Cole and Sarah Creyón, him surviving — Henry Cole, the husband of Elizabeth, is also alive. The complainants are their children. The eldest of them is about twelve years of age; and the defendant Alexander Creyón of the age of seventeen years. The widow of the testator having lately died, this bill was filed for partition of the estate. The complainants claim that the estate should be divided equally between them and their cousin Alexander Creyón, so that each shall have an equal share thereof. The defendant claims a moiety of the estate. The question arises out of the wording of the *214 will. It is contended for the defendant, Alexander Creyón, that he is entitled to a moiety of the estate by the terms of the will, taken in conjunction with the relative situation of the devisees and legatees. On examination of the disposing words of the will, without regarding technical rules, they would seem obviously to import, that the children of Elizabeth Cole and Alexander Creyón, are to take the estate in equal shares. But it is argued for the defendant that this could not be the meaning and intention of the testator, because by the provisions of the will, the situation of the defendant Alexander Creyón, is entirely different 'from that of the children of Elizabeth Cole, in these particulars. He is designated by name — the others are to take as the children of Elizabeth Cole ; and the delivery of their share is postponed to a future day, the day of marriage or attaining twenty-one years of age, and Elizabeth Cole may have more children who will be entitled to shares, besides these born at the death of the testator; and that this involves difficulties in the tenure of the estates, which -ought to lead to a different construction. I have considered the able argument furnished by the counsel on this point. But I am not satisfied by it. It does not appear to me that the plain and obvious import of the disposing words of the will should be changed by a consideration of the difficulties which may grow out of the decision giving effect to that obvious import. *If the meaning of the disposing words of the will was doubtful or equivocal, then the argument ab convenienti would apply, and might lead to contrary construction. It was further argued for the defendant, that the Court might be guided in the construction of the present will, by the provisions of a former will by which the testator devised a moiety of his estate to his niece Elizabeth Cole, and the other moiety to his niece Mrs. Creyón. It is very dangerous to travel out of the will under consideration, for lights to guide us in the construction of it. Those lights would often be delusive. The Courts have been so aware of this danger, that it is only in a few and most peculiar cases that they will receive parol evidence to assist to guide in the construction of wills. Such as to explain the person or thing intended. I do not think that this is one of the cases in which parol evidence is receivable — I permitted the parol evidence to be taken down for consideration. It consisted of two parts — first, that by a former will the testator gave half his estate to one of his nieces and half to the other, and that on Alexander Creyon’s mother marrying contrary to his wishes, he made the new will. This, as far as it goes, would add nothing to defendant’s claim but rather the contrary. One of the witnesses, however, went on to say that he drew the will by the directions of the testator, and that he was directed to draw it so that one half of the estate should go to Alexander Creyón, and the other half to the children of Henry and Elizabeth Cole ; and he believed, in using the words he did, he was obeying the direction of testator, and that if they do not produce that effect it is owing to his mistake. This evidence certainly goes directly to the point, and if received and allowed to control the will, would establish the right of the defendant to a moiety of the estate But I am not at liberty to receive and allow such testimony. It would put every will at the mercy of witnesses who might be purchased and perjured ; and although there might be no danger in this case (and none has been suggested) the precedent would be most dangerous. I *215 am obliged therefore to exclude this testimony. The will then must be interpreted by its own words, and it seems to me they carry the whole estate to be divided equally *among Alexander Creyón and the children of Elizabeth Cole born prior to the time fixed for the division — when the eldest of them attains twenty-one years of age, or day of marriage — under this view of the case it is obvious that no partition can now be made. The application is premature. The complainants are therefore out of Court, and the bill must be dismissed The costs to be paid out of the estate.
Williams, on the part of the plaintiffs,
submitted the case on the brief, without argument.
Standing, for the defendant.
The only question in the case is — whether the offspring of Elizabeth Cole, as a class, take collectively one-half of their testator’s estate, or individually each one-fifth ?
This depends on the construction to be given to the words “ children” and “ offspring.” The defendant contends that they mean a class of un-ascertained individuals; and that A. Creyón takes as an ascertained individual.
That there was a life estate to expire before it could be ascertained who were to take, as the children of Elizabeth Cole, is the important 'feature of the will, and on it the defendant rests his claim to one-half of the estate.
Alexander Creyón was a person certain, and his remainder was to vest in possession, on a fixed and certain event. He therefore took a present interest in a vested remainder. The children of Mrs. Cole were unascer-tained ; who they would be at the termination of the life estate, was wholly uncertain and contingent. Their estate was, therefore, a contingent remainder. 2 Prest. 35.
The first position requires no proof. The second can be supported by authorities. Where a devise or bequest is to'the children of a person, and no time is fixed for the division or distribution, only such children.as are in being at the testator’s death can take. But where the distribution is postponed to a definite period, as to the death of another person, then all take who are in being at that *period, or the death of that other person. In Myers v. Myers, 2 M’C. Ch. 251, Judge Nott has collected and reviewed all the cases on this point, and he says that, “where legacies are given to a class of individuals, as to the children of B. to be divided among them at the death of C., any child, who can entitle himself under the description at the time of distributing the fund, may claim a part of it— as well the children living at the period of distribution although not born till after the testator’s death, as those born before, and living at the happening of the event.” And the same learned Judge adopts the principle of the case of Stanley v. Baker, Moore’s Rep. 220, that “a bequest to the children of a living person, vests in all the children in esse at the termination of the life estate on which it is limited. ”
It is then clear, that the estate could not vest in any child of Elizabeth Cole, until the death of the testator’s widow. In Alexander Creyón, the estate vested on the death of the testator, subject to the life estate of his widow.
*215 From this decree the plaintiffs appealed, because the Chancellor refused partition ; the defendant also appealed, on the ground that the Chancellor erred in deciding that he was only entitled to take equally with the plaintiffs ; whereas, he contended he was entitled to one-half of the estate.
This being established, it will next be attempted to prove, that where classes of persons are to take, and one can take presently, and the other must take on a fututure contingency, each class must, from necessity, be tenants in common with the other, and not joint tenants; and that each takes a moiety.
The fact that they cannot take at one and the same time, excludes one of the unities essential to a joint tenancy. This needs no authority to support it; but see 5 Co. 8; 1 T. R. 630; 2 Prest. 20. Creyón and Cole’s children, therefore, could not take as joint tenants, but as tenants in common. It then remains to be proved, that taking as classes and as tenants in common, they take moieties.
Mr. Preston, vol. 2, p. 21, says, “ a gift to the right heirs of two persons who are dead, will be a gift to them as joint tenants and per capita, and not per stirpes. But a gift to the right heirs of two persons who are living, creates a tenancy in common, and the heirs of each person must take a moiety. So by a gift to the heirs of three persons, of * whom two are dead and one is living — it seems, the heirs of the person who is living, would take one-third part separately to themselves, and the heirs of the two deceased persons would be joint tenants of the two remaining third parts. But if the gift be to the right heirs of two persons who are living and of one who is dead, the heirs of the different persons collectively, would take third parts ” From these principles, the conclusion is deduced, that a bequest to an ascertained individual, and to a class of unascertained individuals, vest one-half in the said individual, and the other half in the individuals of the class collectively when they are ascertained.
Nemo est heres viventis, is the principle of the distinction in the cases put by Mr. Preston. So here, that no one can be ascertained to be the offspring of Mrs. Cole, according to the meaning of this will, till the death of the widow, should decide this case.
There are adjudged cases which, at first blush, would seem to settle the doctrine against the defendant; but a distinction can be shown between them and this.
In Butler v. Stratton, 3 Br. Ch. Rep. 367, the bequest was “to divide equally between A., B. and the children of C.” and it was held that the children of C. took as if named individually in the will. In that ease, it is to be observed, that a present interest was given, and no children could take but such as were in esse at the testator’s death. They were a class of ascertained individuals, as much so as if they had been named in the will.
In Blacker v. Webb, 2 Pr. Wms. 383, there was a present bequest equally to the testator’s son John, to his son Peter’s children, and his daughter, Mrs. Webb’s children. Mrs. Webb was alive. Lord Chancellor King first inclined to the opinion, that the grandchildren would take per stirpes, but finally decided that they would take per capita, as if all the grandchildren’s names had been inserted in the will. Now it is observable that all their names could have been so inserted; because, being a gift to take effect at the testator’s death, they were all. ascertained. That does not then come up to our case — and there the *Chancellor doubted. But a strange reason is given for the Chancellor’s change of opinion. It was, that Mrs. Webb was alive, and therefore, that the children could not represent her, and could not take per stirpes. Had she been dead they would not have represented her in that estate, and the Chancellor changed his opinion on a verbal distinction, without a difference.
In the case of Phillips v. Garth, 3 Brown Ch. 64, Judge Buller for the Chancellor decided, that under a bequest “to next of kin, equally to be divided, share and share alike,” a brother, a nephew, and the nieces of a deceased brother, took per capita, and not per stirpes. Buller said he was bound by the authority of Blacker v. Webb, although he thought they ought to have taken per stirpes. This case, too, was one where a present interest passed, and all the legatees were in esse, and ascertained at the testator’s death.
So, the same decision was made in Northey v. Strange, 1 Pr. Wms. 341; and Weld v. Bradberry, 2 Vern, 105, in which cases, under a bequest to children and grandchildren equally, all took per capita.
In all these cases there was no legatee to come into being, or to be ascertained — they all might have been named in the will, and took as if they had been so named. But in our case, the children were not ascertained — they could not have been named in the will, without changing the entire construction, and they must, therefore take among themselves collectively, a moiety.
If Lord King doubted, and Buller thought his decision wrong, in the case where ascertained individuals were included in nomen collectivum, there can be no reason for not rejecting the rule, in a case where the designation, from necessity, must mean a class and not individuals.
This construction is one which will, in ninety-nine cases out of a hundred, accord with the testator’s intention. Wills are the result of natural affection or friendship. The object is always a person in being ; and the children unborn are provided for only on account of the testator’s affection or friendship for the parent. This would uniformly lead to an appropriation by classes; and exclude *the idea, that the amount of interest which each should take, should depend on the fecundity of the different objects of the testator’s bounty.
But suppose the construction to be a doubtful one. It is an ambiguity of intention, which may possibly be removed by parol, and if it can, the evidence is full as to the real intention. Mr. Roberts in his treatise on Wills, 410, says, “ It seems to be a settled practice of the Courts, that if they can, from the lights furnished in the instrument itself, gain some foundation of conjectural inference, they will look out of the instrument, to the situation of the parties concerned;” and again, “ If matter can be' collected from the general context of the instrument, the approach to an ambiguity patent, in a particular clause, will not exclude the admission of parol evidence, provided it tends to confirm the collective inference from the context.” Now the conjectural inference which we collect from this will, is that by offspring here, was meant a class of individuals, who were the issue of one niece, and intended collectively to take an equal share with A. Creyón, the son of another niece. Had the testator intended otherwise, he would have named the individuals he intended. But he could not name them — for he intended that her after-born children should take. But it could hardly be supposed that he would have intended, that while he left open for admission of all Mrs. Cole’s children, born up to the time of distribution, yet that he intended that A. Creyón, whom he specifically named, should have his share enhanced or diminished, by the deaths or births of the other family. Such an intention will not be supposed unless it is expressed in unambiguous terms. But in this will “ children” do mean a class ; and whether he intended that class should take an equal share with Creyón, or that each individual of that class should take an equal share with him, is doubtful. There may be a strong inference, that the equal share was only intended for the class ; and to strengthen this inference, the parbl testimony is offered.
In Ulrich v. Litchfield, 2 Atk. 312, the ambiguity was on the face of the instrument; but there was a bearing in *the will that assisted the sense, and parol evidence was received to decide the preponderance. Here the uncertainty is, whether Mrs. Cole’s “offspring,” were intended to take individually or as a class — and the parol evidence was given to decide which. It is here to be observed, that the real question is, do they take individually or as a class ? not whether they take per capita or per stirpes? That doubt can only arise, when the question is, do they take sui juris, or in jure representation^? Under this will they take sui juris, and ■ the mother is only named as the designation of the class, or of the individuals of which it is composed, and the word lends no light as to which was meant.
Where there are words used in a will, that are equally susceptible of two distinct meanings, shall both be rejected, or shall extrinsic evidence be admitted, to show which was intended ? Suppose the word “ let,” should be used in an instrument, so as, that if the clause is taken by itself, it is uncertain whether it mean to permit orto hinder. How is the difficulty to be solved ? Look to the context — that furnishes some aid ; but is not entirely conclusive. Shall not the preponderance be decided by parol ? Is it not precisely the case, where a will is made in favor of J. A., and there are two J. A.’s, and parol evidence is received to show which ?
Here the will, all taken together, shows that the word “offspring,” means a class of persons, who will be in esse at the death of the testator’s widow, and the inference is, that they are to take as a class, and we aid that inference by parol.
Harper, J.
I am inclined to think the defendant’s counsel correct in his conclusion, that if there be a bequest to an ascertained individual and to a class of unascertained individuals, (to be ascertained at any future time after the death of the testator) it vests one half in the said individual, and the other half in the individuals of the class collectively when they are ascertained. The cases sufficiently settle that if there be a bequest to the children of A. and the children of B., or to A. and the children of B., they take per capila. This rule however is entirely arbi-trary> ancl I am not sure that if a *different rule had been adopted, the intention of testators would not have been more frequently effected. In this particular case, independently of the parol testimony, I think that we should be most likely to comply with the intention by a different construction. The rule being settled, however, must be adhered to ; *219 but I think the authorities relied on in the argument of counsel, (to which I refer) go far to make out an exception, when the titles of the devisees are to accrue at different times. In addition to the authorities quoted, I may also refer to that from Samme’s case, 13 Co. 57. “ And therefore if a grant be made by deed to one man for term of life, the remainder to the right heirs of A. and B. in fee, and A. hath issue and dieth, and afterwards B. hath issue and dieth, and then the tenant for life dieth; in that case, the heirs of A. and B. are not joint tenants, nor shall join in a scire facias to execute the fine; (24 E. 3; Joinder in Action, 10,) because, that although the remainder be limited by one fine and by joint words, yet because that by the death of A. the remainder as to the moiety vested in his heir, and by the death of B. the remainder vested in his heir, at several times, they cannot be joint tenants.” With respect to this authority, it may be observed that it was the vesting in interest, and not the vesting in possession, which prevented the joint tenancy. At the death'of the tenant for life, when the property vested in possession, A. and B. being both dead, their heirs were ascertained, and there was nothing to prevent their taking jointly.
In the present case, I think it cannot be doubted that the remainder to the defendant Creyon was vested in interest immediately on the death of the testator. Feme defines the fourth class of contingent remainders to be “where the person to whom the remainder is limited is not yet ascertained, or not yet in being.” Certainly Alexander Creyon, named in the will, was a person ascertained and in being, and might have disposed of his remainder, or if he had died during the continuance of the life estate, must have transmitted his interest to his representatives. Biit who the children of Elizabeth Cole should be at the death of the testator’s widow, was uncertain and unascertained. It might have happened that all the children living at the time of the testator’s death had.*died and others had been born before the termination of the life estate. It is certainly settled that if an estate be given to a class of persons, as to the children of A. and B. after a life estate; or if the division be postponed, as until the eldest shall arrive at the age of twenty-one, all the children born before the event happens, will be entitled. ’It has been supposed that in.such case the property should be considered vested in the children living at the time of testator’s death, so that in case of their death, they should transmit it to their representatives, and only so far liable to be devested, as that the estate should open and let in children born before the vesting in possession; and accordingly in the case of Devisme v. Mello, 1 Br. C. C. 537, where £4,000 were given to L. for life, remainder to the children of W., and one of the children of W. living at the death of the testator died during the continuance of the life estate, it was held that her representative was entitled. But the point seems not to have been particularly considered, and I think the decision is opposed to the current of authorities and to the reason and intention. In Gilmore v. Severn, 1 Br. C. C. 581, where a legacy was given to the children of a sister, to be paid them as they respectively attained the age of twenty-one, it is said, that “as none were entitled to a -vested interest, the Court ordered the money to be paid into bank.” This, however, may have been merely an expression of the Reporter. In Viner v. Francis, 2 Br. C. C. 658, where a legacy was given to children of a sister, and one of them *220 died in the testator’s lifetime, it was contended that that child’s portion of the legacy had lapsed; but it was held that the testator must have meant those who should be children at the time of his death. Now, if a legacy be given expressly at a future period, subsequent to testator’s death, there seems to be the same or a stronger reason for saying that he must have meant those who should be children at the time his gift is to take effect. In Godfrey v. Davis, 6 Ves. 49, the Master of the Rolls expresses himself thus: '“Where tbe gift is to all the children of A. at twenty-one, if there is no estate for life, it will vest in all the children coming into existence, till one attains the age of twenty-one. Then that one has a right to claim a share; admitting into participation all the children then existing ;* so if it is to a person for life, and after the death of that person, then to the children of A. the intention is marked, that until the death of the person entitled for life, no interest vests.” In Hughes v. Hughes, 16 Ves. 256, wher the devise was to trustees, to maintain the children of testator’s three daughters, until the younger should attain the age of twenty-one, and then to distribute among them; one of the children who was living at the death of the testator died before the period of distribution, and it was held that her representative was not entitled. In this case, however, some stress was laid on the cir-‘ cumstance that the testator had provided expressly in his will, that if any of the children should die leaving children, the children should stand in the place of the parent. The cases are not so explicit as could be wished, and so far as I have been abl/ to discover, I cannot say that there is any distinct rule on the subject. VI think it however the more natural import of the words, when the bequest is to children at the death of the tenant for life, that those who then answer the description of children, should be meant. The intention too, will, I think, in general be best complied with jby this construction. When property is thus given to children, and one . dies before the period of distribution, it will commonly happen that his I brothers and sisters will be his next of kin, and then it will be immaterial \ whether they take as legatees or as next of kin of the deceased. But it |may happen that there will be a father or mother to take along with them; and when the testator has passed over the parent and given the whole to the children, it would seenuto defeat his intention that the parent should at the period of distribution, take any portion as next of kin. When the 'devise is of real esta.te in England, one brother would take the whole of the deceased’s portion as heir-at-law; and this would seem to defeat the intention that all the children should take equally. There would be reason for making a different construction, and probably a different one ought to be made, when the child dying has left children ; and this also to effectuate the intention; for it cannot be supposed that the testator intended the object of his bounty not/to be capable of transmitting to his children so as to'provide for them, v
*The testator by his will, after the bequest to complainants and defendant, directs the property to be retained in the hands of his executor and executrix until they attain the age of twenty-one years or day of marriage, which shall first happen. According to the construction we have made, one moiety is given to the defendant severally. To this he will be entitled when he attains the age of twenty-one. The other moiety is given to the complainants as a class. This they will be *221 entitled to distribute among tbe children then in esse, when the eldest shall attain the age of twenty-one.
The application for partition was premature. The Chancellor states that at the time of the decree, the eldest of the complainants was about the age of twelve years and the defendant about seventeen. The bill is also informal, in that the surviving executor is only a party in the character of next friend of the complainants. Yet the parties were entitled to come into Court to have their rights ascertained. We are unwilling that the bill should be dismissed,, giving occasion for further expense and litigation.
It is therefore ordered and decreed, that the bill be retained; with liberty to the defendant, when he shall have attained the age of twenty-one, to apply to the Court by petition stating that fact, and praying partition and distribution ; giving proper notice to the complainants and the executor Henry Cole; and that upon such application one moiety of the estate real and personal be apportioned and allotted to him ; and with like liberty to the complainants, when the eldest of them shall have attained the age of twenty-one, to apply for partition and distribution among themselves, or such children of Henry and Elizabeth Cole as may then be in existence.
Johnson and O’Neall, Js., concurred.